**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**NORTHERN DIVISION**
**CASE NO:**

| | | |
|---|---|---|
| **Marlen Guadalupe Landeros** | ) | |
| **Covarrubias, Sandivel Villanueva** | ) | |
| **Flores, Rita Dorali Curiel Sandoval** | ) | |
| **and all others similarly situated,** | ) | |
| | ) | |
| **Plaintiffs** | ) | |
| | ) | |
| **v.** | ) | **COMPLAINT** |
| | ) | |
| **Capt. Charlie's Seafood, Inc., Phillip** | ) | |
| **Carawan and Tara Foreman,** | ) | |
| | ) | |
| **Defendants** | ) | |
| _____ | ) | |

## PRELIMINARY STATEMENT

1.  This is an action brought on behalf of Marlen Guadalupe Landeros Covarrubias,

Sandivel Villanueva Flores and Rita Dorali Curiel Sandoval (collectively the "named Plaintiffs")

on behalf of themselves and all other similarly situated employees against their former

employers. The named Plaintiffs and their coworkers worked for Defendants in North Carolina

on temporary migrant guestworker visas. The named Plaintiffs were subjected to numerous

labor violations, including violations of federal and state wage and hour laws; unlawful failure to

reimburse Plaintiffs for expenses associated with the migrant guestworker program; sex

discrimination in job assignment and allocation of hours; and wrongful discharge based on sex

discrimination in violation of the public policy of the state of North Carolina.

2.  Defendants are a seafood processing company, its corporate president and its

manager, located in Columbia, Tyrrell County, North Carolina.

3. The named Plaintiffs seek to represent several classes of other workers. The named Plaintiffs seek to represent two classes and one subclass consisting of other employees of the Defendants who suffered violations of federal and state wage and hour laws, as defined in ¶¶ 44, 47 and 49. The named Plaintiffs also seek to represent a class consisting of women who were wrongfully discharged by Defendants in violation of North Carolina public policy as a result of sex discrimination, including sex discrimination in job assignment and allocation of hours, as further set forth in ¶ 61.

4. The action is based on Defendants' violations in 2007, 2008 and 2009 of the Fair Labor Standards Act (hereinafter "FLSA"), 29 U.S.C. §§ 201 *et seq*; the North Carolina Wage and Hour Act (hereinafter "NCWHA"), N.C. Gen. Stat. §§ 95-25.6 and 95-25.22; and common law wrongful discharge based on sex discrimination in violation of the public policy of the State of North Carolina as set forth in the North Carolina Equal Employment Practices Act (hereinafter "NCEEPA"), N.C. Gen. Stat. § 143-422.2.

5. In addition, the named Plaintiffs filed Charges of Discrimination with the United States Equal Employment Opportunity Commission (hereinafter "EEOC") on December 18, 2009; February 17, 2010; and February 25, 2010. The named Plaintiffs intend to amend this Complaint in the future to include claims of discrimination based on sex in violation of Title VII of the Civil Rights Act of 1964, as amended (hereinafter "Title VII"), 42 U.S. §§ 2000e *et seq*., upon exhaustion of administrative remedies. At such time as they may amend this Complaint to include allegations of discrimination in violation of Title VII, the named Plaintiffs further intend to seek to represent a class consisting of women who suffered violations of federal antidiscrimination law based on sex discrimination in job assignment and allocation of hours by Defendants.

6. Based on Plaintiffs' claims under 29 U.S.C. § 206 of the Fair Labor Standards Act and N.C.G.S. §§ 95-25.6 and 95-25.22, they seek payment of back wages and an equal amount of liquidated damages, attorneys' fees, and costs under 29 U.S.C. § 216(b) and N.C.G.S. §§ 95-25.22(a), (a1), and (d). Based on their claims under North Carolina common law, plaintiffs seek damages and declaratory relief to redress these violations of the law.

## JURISDICTION

7. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

8. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

9. This Court has personal jurisdiction over Defendants and venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

## PARTIES

10. The named Plaintiffs are women who came to North Carolina in 2009 from their permanent place of residence in Mexico to work for Capt. Charlie's Seafood, Inc. (hereinafter "Capt. Charlie's") as seafood processors pursuant to a temporary guestworker visa program authorized under the Immigration and Nationality Act, known as the "H-2B program." 8 U.S.C. § 1101(a)(15)(H)(ii)(b).

11. The named Plaintiffs' first language is Spanish and they speak little or no English. Upon information and belief, members of the proposed Plaintiff classes also speak Spanish as their first language and speak little or no English.

3

12. The named Plaintiffs and members of the classes they seek to represent were employees of Defendants within the meaning of the FLSA, the NCWHA, and the NCEEPA during any workweek in which they performed work for Defendants.

13. The named Plaintiffs and the members of the classes they seek to represent were employed by Defendants when they were engaged in the production of goods for interstate commerce or as part of an enterprise of Defendants that was engaged in interstate commerce.

14. At all times relevant to this action, Defendant Capt. Charlie's was and is a domestic seafood processing corporation organized under the laws of the state of North Carolina and was and is engaged in the production of goods for interstate commerce, or was an enterprise engaged in interstate commerce, with its principal place of business in Columbia, Tyrell County, North Carolina and doing business within the state of North Carolina.

15. The registered agent for service of process upon Capt. Charlie's is Lloyd C. Smith, Jr., 203 East Dundee Street, Windsor, North Carolina 27983.

16. At all times relevant to this Complaint, Defendant Capt. Charlie's was an employer of the named Plaintiffs and was and/or is an employer of the members of the classes they seek to represent within the meaning of the FLSA and the NCWHA.

17. At all times relevant to this Complaint, Defendant Capt. Charlie's was an employer of the named Plaintiffs and was and/or is an employer of the members of the classes they seek to represent within the meaning of the NCEEPA.

18. At all times relevant to this action, Defendant Phillip Carawan (hereinafter "Carawan") was and is the president of Capt. Charlie's.

19.   At all times relevant to this Complaint, Defendant Carawan exercised, and/or will exercise, the authority to direct, control, and/or supervise the work of the named Plaintiffs and members of the proposed Plaintiff classes defined in ¶¶ 44, 47, 49 and 61.

20.   Upon information and belief, at all times relevant to this action, Defendant Tara Foreman (hereinafter "Foreman") was and is the manager of Capt. Charlie's.

21.   Upon information and belief, at all times relevant to this Complaint, Defendant Foreman exercised, and/or will exercise, the authority to direct, control and/or supervise the work of Plaintiffs and members of the proposed Plaintiff classes defined in ¶¶ 44, 47, 49 and 61.

22.   On information and belief, Defendants regularly employed more than fifteen (15) employees during the relevant time period.

## FACTUAL ALLEGATIONS

### A. DEFENDANTS' H-2B VISA APPLICATIONS

23.   In order to participate in the H-2B program, Defendants were obliged to apply for and obtain an Alien Employment Certification pursuant to Title 20, Code of Federal Regulations, Part 621 ("clearance order") from the U.S. Department of Labor and North Carolina Employment Security Commission. (New regulations governing the H-2B program took effect in January 2009. 20 CFR part 655.  All clearance orders submitted by Defendants prior to January 2009 were governed by the old regulations.)

24.   Defendants were certified by the U. S. Department of Labor to employ forty-nine (49) H-2B workers as seafood processors from October 1, 2008 through May 31, 2009.  The named Plaintiffs worked for Defendants pursuant to this seafood processor clearance order, and received extensions of their visas to continue working for Defendants after May 31, 2009.

5

25.   Defendants were additionally certified by the U.S. Department of Labor to employ H-2B workers from March 1, 2007 through December 31, 2007; April 5, 2007 through December 31, 2007; April 1, 2008 through December 31, 2008; and March 2, 2009 through December 31, 2009.  Members of the proposed Plaintiff classes worked for Defendants as H-2B guestworkers pursuant to some or all of the above H-2B clearance orders as well as the October 1, 2008 through May 31, 2009 clearance order.

26.   In each clearance order Defendants submitted to the U.S. Department of Labor, they were required to certify and declare under penalty of perjury that:

". . . the wage paid to the alien when the alien begins work will equal or exceed the prevailing wage which is applicable at the time the alien begins work; and

". . . the job opportunity does not involve unlawful discrimination by race, creed, color, national origin, age, sex, religion, handicap or citizenship."

ETA Form 750, parts 23 and 24 (Applications submitted beginning in 2009 use new ETA Form 9142).

## B.  COSTS RELATED TO THE H-2B VISA PROGRAM

27.   In order to come to the United States to work for Defendants under the H-2B program, the named Plaintiffs and all proposed class members were required to purchase, at their own expense, a "Derecho de Visa," a visa reciprocity fee paid at the Mexican bank "Banamex."

28.   Prior to November 2007, the cost of the visa reciprocity fee was $45.  Beginning in November 2007 and continuing until the present, the visa reciprocity fee has been $100.  The named Plaintiffs each paid the $100 reciprocity fee in April 2009.  The putative class members each paid $45 and/or $100 depending on the year(s) in which they worked for Defendants pursuant to an H-2B visa.

29. In order to obtain an H-2B visa, the named Plaintiffs and all proposed class members were also required to pay an additional visa fee to the U.S. Consulate. The visa fee paid by the named Plaintiffs and others similarly situated was approximately $100.

30. The named Plaintiffs and others similarly situated were required to pay for their own transportation to the consulate as well as their own hotel costs while they waited for the issuance of their visas in Monterey, Mexico following their interview with the U.S. Consulate.

31. Following the issuance of their H-2B visas, the named Plaintiffs and others similarly situated were required to travel from Mexico to Defendants' operation in North Carolina by bus, crossing the Mexico-United States border.

32. The named Plaintiffs and others similarly situated were required to pay for the bus from Monterey, Mexico to North Carolina at their own expense. The named Plaintiffs paid approximately $270 for their bus ticket.

33. The named Plaintiffs and others similarly situated were also required to pay a $6.00 fee to U.S. Customs and Border Protection upon crossing the U.S.-Mexico border ("border crossing fee"). This fee was for the issuance of USCIS form I-94, which is required to enter the U.S.

34. The expenses described in ¶¶ 27-33 were an incident of and necessary to Defendants' employment of the named Plaintiffs and each member of the proposed classes and were incurred primarily for the benefit or convenience of Defendants, within the meaning of 29 C.F.R. §§ 531.32(c) and 778.217.

35. In each year that they received H-2B visas to work for Defendants, the named Plaintiffs and each of the proposed class members incurred costs in excess of $300 for the expenses described in ¶¶ 27-33.

36.   The named Plaintiffs and proposed class members incurred the costs described in ¶¶ 27-33 before the receipt of their first pay checks in each year that they received H-2B visas to work for Defendants.

37.   At no time did Defendants reimburse the named Plaintiffs for the costs described in ¶¶ 27-33.  Upon information and belief, Defendants did not reimburse members of the proposed classes for the costs described in ¶¶ 27-33 at any time relevant to this lawsuit.

38.   As a result of Defendants' failure to reimburse the named Plaintiffs and proposed class members for the costs referred to in ¶¶ 27-33 during the first workweek, the named Plaintiffs and members of the proposed classes were not paid all of their wages when due at the wage rate(s) that Defendants had agreed to pay them, during the first workweek they were employed.

## C.   DEFENDANTS' PAY PRACTICES

39.   In order to employ guestworkers through the H-2B program, Defendants were required to pay all H-2B employees at least the "prevailing wage," which is identified in each clearance order. Old 20 C.F.R. § 656.21(b)(3)(i) (which was in effect at time of Defendants' 2007, 2008 and 2009 applications); 20 C.F.R. § 655.22(e) (2009).

40.   The prevailing wage for the October 1, 2008 through May 31, 2009 clearance order was $7.63 per hour.  The prevailing wage for the March 2, 2009 through December 31, 2009 clearance order was $7.38.

41.   Defendants compensated the named Plaintiffs and others similarly situated for crabpicking work on a piece-rate basis per pound of meat removed.  During some pay periods, Defendants supplemented the named Plaintiffs' and their similarly situated coworkers' piece-rate pay with "make-up" to bring the average weekly wage up to the minimum wage required by the

FLSA ($6.55 per hour from July 24, 2008 through July 23, 2009; $7.25 per hour from July 24, 2009 until the present).

42.    As a result of Defendants' practice of calculating employees' pay based on the federal minimum wage as described in ¶ 41, the named Plaintiffs and their similarly situated coworkers were paid less than the prevailing wage described in ¶¶ 39-40, during some workweeks.

43.    The named Plaintiffs and all members of the FLSA and NCWHA classes defined in ¶¶ 44, 47 and 49 they seek to represent had an express, constructive, or implied agreement that Defendants would pay them wages at the rate required by any applicable federal and/or state law when those wages were due for each hour or part of an hour that the named Plaintiffs and proposed class members performed compensable work under the FLSA and/or the NCWHA for Defendants.

### 1.    Fair Labor Standards Act (FLSA) Collective Action Allegations

44.    The named Plaintiffs seek to bring their claims under the Fair Labor Standards Act on behalf of themselves individually, and all other similarly situated employees of Defendants who worked in any pay period falling within the three chronological years immediately preceding the date on which this action was filed and continuing thereafter through the date on which final judgment is entered in this action and who timely file (or have already filed) a written consent to be a party to this action pursuant to 29 U.S.C. § 216(b). ("FLSA class"). They seek unpaid minimum wages and liquidated damages.

45.    The named Plaintiffs and the members of the FLSA class are similarly situated.  The named Plaintiffs and other FLSA class members came to work for Defendant Capt. Charlie's as H-2B seafood processors in 2007, 2008, and/or 2009 and continuing thereafter pursuant to visas

issued under 8 U.S.C. § 1101(a)(15)(H)(ii)(b). The named Plaintiffs and FLSA class members all worked in Defendants' facilities processing seafood, which included picking crab meat, shucking oysters, packing crab and packing oysters.

46.   The named Plaintiffs and the members of the FLSA class they seek to represent under 29 U.S.C. § 216(b) were each paid wages less than those required by 29 U.S.C. § 206(a) during the first workweek that they were employed by one or more Defendants.  All Plaintiffs and FLSA class members who traveled from Mexico to work in Defendants' plant processing seafood were required to pay for travel, visa and border crossing expenses, as described in ¶¶ 27-35.  These expenses, which were for the benefit of Defendants, reduced the named Plaintiffs' and FLSA class members' wages below minimum wage required by the FLSA during the first workweek.

## 2.   North Carolina Wage and Hour Act (NCWHA) Class Action Allegations

47.   The named Plaintiffs also seek to represent a class of persons under Rule 23(b)(3), Fed.R.Civ.P., for back wages and liquidated damages under N.C. Gen. Stat. §§95-25.6, 95-25.22, and 95-25.22(a1) ("NCWHA class"). The NCWHA class consists of all non-supervisory workers who were, are and/or shall be jointly or severally employed by Defendants at any time from October 1, 2008  through the date on which final judgment is entered in this action, who performed and/or shall perform any work for Defendants pursuant to a labor certification and visa issued to the Defendants and those workers under 8 U.S.C. § 1101(a)(15)(H)(ii)(b), and who did not receive their wages when they were due.

48.  The NCWHA violations occurred when Defendants failed to reimburse the named Plaintiffs and members of the NCWHA class for their transportation, visa, and border-crossing expenses during the first week in which they performed labor for Defendants, as described in ¶¶

27-35. As a result of Defendants' failure to reimburse the named Plaintiffs and members of the NCWHA class, the named Plaintiffs and members of the NCWHA class were paid less than the prevailing wage in violation of N.C.G.S. § 95-25.6.

49. The NCWHA class includes a subclass that the named Plaintiffs also seek to represent under Rule 23(b)(3), Fed.R.Civ.P, for back wages and liquidated damages under N.C.G.S. §§ 95-25.6 and 95-25.22 ("NCWHA unpaid wage subclass"), consisting of all non-supervisory employees of Defendants who were employed by Defendants for any pay period beginning on October 1, 2008 and continuing thereafter through the date on which final judgment is entered in this action who did not receive all of their wages when those wages were due under an express, constructive, or implied agreement to pay those wages at those rates for all work performed for the Defendants. This violation occurred when the Defendants failed to compensate the named Plaintiffs and members of the NCWHA unpaid wage subclass at or above the prevailing wage because they were paid a piece rate which resulted in an average wage less than the promised wage and/or they were paid an hourly wage which was less than the promised wage.

50. Joinder of all class members for the proposed NCWHA class would be impracticable, if not impossible, based in part upon the fact that all of the proposed class members who are former employees of Defendants are migrant workers whose permanent place of residence is in Mexico and who likely do not speak English. Defendants received H-2B temporary labor certification from the United States Department of Labor for approximately 150 openings in 2008 and 2009. Upon information and belief, Defendants have requested H-2B certification for work to be performed throughout 2010 as well. Therefore the NCWHA class

could include as many as 150 individuals. Upon information and belief, the NCWHA subclass would exceed 20 individuals.

51. The questions of law or fact which are common to the members of the NCWHA class and which predominate over any other questions affecting only individual members of the class under Rules 23(a)(2) and 23(b)(3), Fed.R.Civ.P., are: (a) whether the transportation, visa, and border crossing expenses and fees were primarily for the benefit of the employer and (b) whether the Defendants reduced the named Plaintiffs' and NCWHA class members' pay below the promised wage by requiring them to bear the costs identified above and failing to reimburse them for those costs during their first workweek.

52. The question of law or fact which is common to the members of the NCWHA unpaid wage subclass and which predominates over any other questions affecting only individual members of the class under Rules 23(a)(2) and 23(b)(3), Fed.R.Civ.P., is whether the Defendants failed to pay the named Plaintiffs and the members of the NCWHA unpaid wage subclass all the wages they had agreed to pay when those wages were due for each hour or part of an hour that each such worker was employed by the Defendants, in accordance with N.C.G.S. § 95-25.6.

53. The named Plaintiffs' claims are typical of the claims of the NCWHA class of persons under Rules 23(a)(3) and 23(b)(3), Fed.R.Civ.P, in that the named Plaintiffs claim Defendants required the named Plaintiffs and the NCWHA class members to bear costs which were for the benefit of the employer and which brought the named Plaintiffs' and NCWHA class members' weekly pay below the promised wage during the first workweek.

54. The claims of the named Plaintiffs are typical of the claims of the NCWHA unpaid wage subclass they seek to represent under Rule 23(a)(3), Fed.R.Civ.P., in that the named Plaintiffs claim Defendants failed to comply with their agreement to pay wages when due to the

12

named Plaintiffs and to the class members at the promised rate for work performed for the Defendants by calculating employees' pay based on a lower hourly wage than the promised wage and/or failing to ensure that individuals paid on a piece-rate basis earned at least the promised wage.

55.   The named Plaintiffs' interests in the claims are in no way antagonistic or adverse to those of other NCWHA class or NCWHA unpaid wage subclass members.

56.   The named Plaintiffs will fairly and adequately represent the interests of the NCWHA class of persons defined in ¶¶ 47 and 49 above.  The undersigned counsel Carol Brooke and Clermont Fraser are experienced litigators who have been named counsel for many class actions involving similar claims to those raised in this action.

### D.  DISCRIMINATION

57.   The named Plaintiffs were part of a group of approximately 20 women who began working for Defendants in May 2009 pursuant to H-2B visas.  In employing the named Plaintiffs and others, Defendants were obligated to abide by the public policy of North Carolina, as set forth in the NCEEPA, which states that "[i]t is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees."  N.C.G.S. § 143-422.2.

58.   From the beginning of their employment, the named Plaintiffs and other female employees were treated differently from the male employees in ways that culminated in the dismissal of the named Plaintiffs and some of the other women.

59.   Defendants gave the named Plaintiffs and other female employees different work from that given to male employees.  Defendants gave the named Plaintiffs and other female

employees only crab picking work, which entails removing meat from cooked crabs, cleaning the meat, and placing it in containers. In contrast, Defendants gave male employees a variety of work, including cooking crabs, taking crabs to and from the table, and handling crab traps. The work offered to male employees provided them with more hours and more days per week of work than women, including the named Plaintiffs, were offered. The named Plaintiffs and the other women were capable of performing the work given to the men.

60. As a result of this gender discrimination in job assignments and amount of work, Defendants retained their male employees and terminated only women, including the named Plaintiffs, when they discharged a group of 20 employees in August 2009. Prior to the named Plaintiffs' wrongful discharge, they had performed their jobs satisfactorily.

### 1. **Rule 23(b)(3) Class Action Allegations**

61. The named Plaintiffs seek to represent a class of persons under Rule 23(b)(3), Fed.R.Civ.P., for compensatory damages based on their wrongful discharge in violation of North Carolina public policy as set forth in N.C. Gen. Stat. §§143-422.2 ("NCEEPA class"). The NCEEPA class consists of all non-supervisory women who were, are and/or shall be jointly or severally employed by Defendants at any time during the two chronological years immediately preceding the date on which this action was filed and continuing thereafter through the date on which final judgment is entered in this action, who performed and/or shall perform any work for Defendants pursuant to a labor certification and visa issued to the Defendants and those workers under 8 U.S.C. § 1101(a)(15)(H)(ii)(b), and who were wrongfully discharged in violation of the public policy of North Carolina as set forth in the NCEEPA.

62. The NCEEPA violations occurred when Defendants wrongfully discharged the named Plaintiffs and the NCEEPA class members as a result of Defendants' discriminatory practice of giving women different jobs and giving them fewer hours than men.

63. Joinder of all class members for each proposed class would be impracticable, if not impossible, based in part upon the fact that all of the proposed class members who are former employees of Defendants are migrant workers whose permanent place of residence is in Mexico and who likely do not speak English. Defendants wrongfully discharged approximately twenty women. Therefore the NCEEPA class could include as many as twenty women.

64. The questions of law or fact which are common to the members of the NCEEPA class and which predominate over any other questions affecting only individual members of the class under Rules 23(a)(2) and 23(b)(3), Fed.R.Civ.P., are: (a) whether Defendants had a practice of giving the named Plaintiffs and the NCEEPA class different jobs and giving them fewer hours than male employees, (b) whether Defendants discharged the named Plaintiffs and the NCEEPA class as a result of this discriminatory practice, and (c) whether Defendants retained the men after discharging the named Plaintiffs and the NCEEPA class.

65. The claims of the named Plaintiffs are typical of the claims of the NCEEPA class under Rule 23(a)(3), Fed.R.Civ.P., in that the named Plaintiffs claim that Defendants wrongfully discharged them, while retaining the men, as result of Defendants' discriminatory practice of giving women different jobs and fewer hours than the men.

66. The named Plaintiffs' interests in the claims are in no way antagonistic or adverse to those of other class members.

67. The named Plaintiffs will fairly and adequately represent the interests of the NCEEPA class of persons defined in ¶ 61 above. The undersigned counsel Lenora Lapidus is an

experienced employment discrimination litigator who has been counsel in cases involving employment discrimination and class counsel in cases involving sex discrimination.

### FIRST CLAIM FOR RELIEF (Fair Labor Standards Act)

68.   Paragraphs 1 through 67 above are realleged and incorporated by reference by the named Plaintiffs and each member of the collective action described in ¶ 44 which the named Plaintiffs seek to represent pursuant to 29 U.S.C. §216(b).

69.   Defendants failed to pay the named Plaintiffs and the members of the statutory class at least the required federal minimum wage for each hour or part of an hour that they worked in each workweek, in violation of 29 U.S.C. § 206. This violation resulted from Defendants' failure to reimburse expenses which were incurred by Plaintiffs and other similarly situated workers primarily for the benefit or convenience of Defendants, prior to Plaintiffs' and other similarly situated workers' first week of work, as specified in ¶¶ 27-35. When these expenses are calculated as deductions from Plaintiffs' and other similarly situated workers' first week's pay, as required by law, they cause Plaintiffs' and other similarly situated workers' first week's earnings to be negative, bringing the Plaintiffs' and other similarly situated workers' earnings well below minimum wage for that pay period.

70.   Defendants knew or showed reckless disregard as to whether their conduct was prohibited by the FLSA and its accompanying regulations.

71.   As a result of Defendants' actions, the named Plaintiffs and the class of similarly situated persons defined in ¶ 44 have suffered damages in the form of unpaid wages and liquidated damages that may be recovered from Defendants, jointly and severally, under 29 U.S.C. § 216(b).

## SECOND CLAIM FOR RELIEF (North Carolina Wage and Hour Act)

72.    Paragraphs 1 through 71 above are realleged and incorporated by reference by the named Plaintiffs and the class and subclass defined in ¶¶ 47 and 49 above which the named Plaintiffs seek to represent.

73.    Defendants failed to reimburse the named Plaintiffs and members of the NCWHA class for their transportation, visa, and border crossing costs during the first workweek, as described in ¶¶ 27-35.  When those expenses are calculated as deductions from Plaintiffs' and NCWHA class members' first week's pay, they cause Plaintiffs' and NCWHA class members' earnings for that week to be negative, which is well below  the prevailing wage which Defendants promised and were required to pay, in violation of N.C.G.S. § 95-25.6.

74.    Defendants calculated Plaintiffs' and NCWHA subclass members' pay using an hourly wage which was less than the prevailing wage.  As a result, Defendants failed to pay the named Plaintiffs and the members of the NCWHA subclass defined in ¶ 49 above at least the promised wage for all compensable work time that the Defendants allowed, suffered, and/or required the named Plaintiffs and the NCWHA subclass members to work for Defendants in each workweek, in violation of N.C.G.S. § 95-25.6.

75.    As a result of these actions of the Defendants in violation of their rights under N.C.G.S. §§95-25.6 and 95-25.8, the named Plaintiffs and the NCWHA class and NCWHA subclass they seek to represent have suffered damages in the form of unpaid wages and liquidated damages that may be recovered from Defendants, jointly and severally, under N.C.G.S. §§ 95-25.22(a) and 95-25.22(a1).

17

## THIRD CLAIM FOR RELIEF

### (Wrongful Discharge Based on Violation of North Carolina Public Policy)

76.   Paragraphs 1 through 75 above are realleged and incorporated by reference by the named Plaintiffs and the class defined in ¶ 61 above which the named Plaintiffs seek to represent.

77.   The public policy of North Carolina prohibits discrimination in employment on the basis of sex.  This public policy is set forth in the NCEEPA, which states that "[i]t is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees."  N.C.G.S. § 143-422.2.

78.   Defendants discharged the named Plaintiffs and the NCEEPA class as a result of Defendants' discriminatory practice of giving women different jobs and fewer hours than men. Defendants thereby violated the public policy of the state of North Carolina when they wrongfully discharged the named Plaintiffs and the NCEEPA class.

79.   As a consequence of Defendants' violation of the public policy of the state, the named Plaintiffs and the NCEEPA class suffered and will continue to suffer loss of wages and other tangible job benefits. Plaintiffs are therefore entitled to receive compensatory damages.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court:

1.  Enter an order finding that this Court has jurisdiction over Plaintiffs' claims;

2.  Certify this action as a collective action under 29 U.S.C. § 216(b) with respect to the
    FLSA class defined in ¶ 44 of this Complaint;

3. Certify this action as a class action under Rule 23(b)(3), Fed.R.Civ.P., for back wages and liquidated damages under N.C.G.S. § 95-25.22 with respect to the NCWHA class defined in ¶ 47 and the NCWHA subclass defined in ¶ 49;

4. Certify this action as a class action under Rule 23(b)(3), Fed. R. Civ. P., for compensatory damages under N.C.G.S. §§143-422.2 with respect to the NCEEPA class defined in ¶ 61;

5. Enter a judgment against Defendants Capt. Charlie's Seafood, Inc., Phillip Carawan and Tara Foreman, jointly and severally, and in favor of the named Plaintiffs and all other similarly situated employees of Defendants described in ¶ 44 of this Complaint for compensatory damages under the First Claim for Relief in an amount equal to the total of the unpaid minimum wages due to the named Plaintiffs and each of those other similarly situated employees of Defendants under 29 U.S.C. § 206(a)(1), plus an equal amount as liquidated damages under 29 U.S.C. § 216(b);

6. Enter judgment against Defendants Capt. Charlie's Seafood, Inc., Phillip Carawan and Tara Foreman, jointly and severally, and in favor of the named Plaintiffs and all other similarly situated employees of Defendants described in ¶¶ 47 and 49 of this Complaint for compensatory damages under the Second Claim for Relief in an amount equal to the total of the unpaid promised wages due to the named Plaintiffs and the classes of workers under N.C.G.S. §§ 95-24.22(a), plus an equal additional amount as liquidated damages under N.C.G.S. § 95-25.22(a)(1) plus interest in the manner and at the rate prescribed in N.C.G.S. § 95-25.22(a);

7. Enter judgment against Defendants Capt. Charlie's Seafood, Inc., Phillip Carawan and Tara Foreman, jointly and severally, and in favor of the named Plaintiffs and all

other similarly situated employees of Defendants described in ¶ 61 of this Complaint for compensatory damages under the Third Claim for Relief under N.C.G.S. §§143-422.2;

8. Issue a declaratory judgment pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 that Defendants violated the Plaintiffs' rights under the FLSA, NCWHA and NCEEPA and their implementing rules and regulations.

9. Award Plaintiffs the costs of this action against Defendants Capt. Charlie's Seafood, Inc., Phillip Carawan and Tara Foreman, jointly and severally;

10. Award Plaintiffs reasonable attorneys' fees under 29 U.S.C. § 216(b), N.C.G.S. § 95-25.22(d), and N.C.G.S. § 95-243 against Defendants Capt. Charlie's Seafood, Inc., Phillip Carawan and Tara Foreman, jointly and severally;

11. Award against Defendants Capt. Charlie's Seafood, Inc., Phillip Carawan and Tara Foreman, jointly and severally, and in favor of the named Plaintiffs and the classes of workers they seek to represent, prejudgment and post judgment interest as allowed by law; and

12. Grant such other relief as the Court may deem just and proper.

This the 17th day of March, 2010

Respectfully submitted,

NORTH CAROLINA JUSTICE CENTER
P.O. Box 28068
Raleigh, NC  27611
919-856-2165
919-856-2175 (fax)

BY:    /s/ Clermont L. Fraser
         Clermont L. Fraser
         919-861-0606
         clermont@ncjustice.org.

Attorney at Law
NC Bar # 36761

/s/ Carol L. Brooke
Carol L. Brooke
919-856-2144
carol@ncjustice.org
Attorney at Law
NC Bar # 29126

AMERICAN CIVIL LIBERTIES UNION OF
NORTH CAROLINA LEGAL FOUNDATION
P.O. Box 28004
Raleigh, NC 27611
919-834-3466
866-511-1344 (fax)

BY:     /s/ Katherine Lewis Parker
        Katherine Lewis Parker
        919-834-3466
        acluncklp@nc.rr.com
        Attorney at Law
        NC Bar # 36263

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street
New York, NY 10004
212-519-7861
212-549-2580 (fax)

  BY:    /s/ Lenora M. Lapidus
        Lenora M. Lapidus
        212-549-2668
        llapidus@aclu.org
        Attorney at Law
Attorney pursuant to LR 83.1 and LR 57.1 EDNC

        /s/ Ariela M. Migdal
        Ariela M. Migdal
        212-519-7861
        amigdal@aclu.org
        Attorney at Law
Attorney pursuant to LR 83.1 and LR 57.1 EDNC

21