| | |
|---|---|
| MARLEN GUADALUPE LANDEROS COVARRUBIAS; SANDIVEL VILLANUEVA FLORES; RITA DORALI CURIEL SANDOVAL; and all others similarly situated, <br>　　　　　　Plaintiffs, <br><br>v. <br><br>CAPT. CHARLIE'S SEAFOOD, INC.; PHILLIP CARAWAN; and TARA FOREMAN, <br>　　　　　　Defendants. | SETTLEMENT <br> <u>CLASS</u> <u>CERTIFICATION</u> <br> ORDER |

## I. STATEMENT OF THE CASE

This matter is before the court on the parties' Joint Motion for Certification of Settlement Classes [DE-52]. The original Complaint [DE-1] was filed on March 17, 2010, and a First Amended Complaint [DE-58] (hereafter "Complaint;" all references hereafter to "Complaint" are to the First Amended Complaint) was allowed to be filed on June 28, 2011. The Complaint seeks relief in three claims. The first claim is for minimum wage violations pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.* The second is a class action claim pursuant to Rule 23(b)(3), FED. R. CIV. P., for failure to pay the promised wage under the North Carolina Wage and Hour Act ("NCWHA"), N.C. GEN. STAT. §§ 95-25.1, *et seq.* The third claim also is alleged as a Rule 23(b)(3) class action for wrongful discharge in violation of public policy under the North Carolina Equal Employment Practices Act ("NCEEPA"), N.C. GEN. STAT. § 143-422.2. The Defendants denied liability on all claims in their Answers, [DE-17, -19 and -20].

The court is informed by counsel for the parties that the Plaintiffs and the Defendants have negotiated a Settlement Agreement among themselves which includes relief on a class-

wide basis for the Plaintiffs' NCWHA claims.[1] The court is informed that the Defendants consent to and join in the Joint Motion for Certification of Settlement Classes ("Joint Motion") [DE-52], pursuant to the Settlement Agreement reached among the parties, which agreement was the result of compromise to resolve the disputes among them, and does not constitute an admission of any liability by or to any party. Accordingly, pursuant to Rule 23, FED. R. CIV. P., the parties seek certification of a Plaintiff class and subclass under the NCWHA, §§ 95-25.6 and 95.25-22 for unpaid wages and liquidated damages.

## II. RELEVANT FACTS

The parties agree that the relevant facts supporting their Joint Motion are alleged in paragraphs 23 through 43 of the Complaint. Additionally, the named Plaintiffs' sworn declarations previously filed herein describe both their individual claims and the claims of similarly situated members of the putative Rule 23 class and subclass. *See* [DE-33.2; -33.3; and -33.4]. Plaintiffs explain that the factual predicate for this case is nearly identical in all material aspects to the facts in both *Hernandez Garcia v. Frog Island Seafood, Inc.*, 644 F. Supp. 2d 696 (E.D.N.C. 2009) ("*Hernandez Garcia*"), and *Gaxiola v. Williams Seafood of Arapahoe, Inc.*, ___ F. Supp. 2d ___, No. 4:08-CV-134-H(3), 2011 WL 806792 (E.D.N.C. March 1, 2011) ("*Gaxiola*"), when NCWHA claims were certified in those cases as Rule 23 class actions.

Here, the class the Plaintiffs seek to represent under Rule 23(b)(3), FED. R. CIV. P., for defendants' violations of the NCWHA ("**NCWHA Class**") is defined as follows:

> all non-supervisory workers who were, are and/or shall be jointly or severally employed by Defendants at any time from March 17, 2008, and continuing thereafter through the date on which final judgment is entered in this action, who performed and/or shall perform any work for Defendants pursuant to a labor certification and visa issued to the Defendants and those workers under 8 U.S.C. § 1101(a)(15)(H)(ii)(b), and who did not receive all of their wages when they were due because of Defendants' failure to reimburse class members for

---

[1] The parties' settlement agreement ultimately would result in dismissal of the FLSA and NCEEPA claims, and thus resolve this litigation in its entirety.

2

Case 2:10-cv-00010-F  Document 61  Filed 07/06/11  Page 2 of 13

expenses they incurred obtaining their H-2B visas and traveling from their
homes in Mexico to North Carolina to work for Defendants.

See Complaint [DE-58], ¶ 47. The NCWHA Class includes a subclass which the named plaintiffs also seek to represent ("**NCWHA Subclass**"). The NCWHA Subclass is defined as:

> all non-supervisory employees of defendants who were employees by Defendants for any period beginning on March 17, 2008, and continuing thereafter through the date on which final judgment is entered in this action, who did not receive all of their wages when those wages were due under an express, constructive, or implied agreement to pay those wages at those rates for all work performed for the Defendants when Defendants paid members of the NCWHA Subclass less than the prevailing wage required by the H-2B visa program during some workweeks.

Id. at ¶ 49.

Here, as in *Hernandez Garcia* and *Gaxiola*, the Defendants operate a seafood processing company in which they employed the named Plaintiffs and members of the NCWHA Class through the H-2B visa program, which allows the temporary employment of foreign workers in the United States. *See* 8 U.S.C. § 1101(a)(15)(H)(ii)(b). For each year that Defendants employed H-2B workers, the Defendants first had to submit an H-2B Alien Employment Certification, or Clearance Order, to the U.S. Department of Labor ("DOL"). *See, e.g*, Defendants' 2009 Clearance Orders [DE-33.1]. The H-2B Clearance Orders specify the nearly identical terms and conditions of employment which were offered to the named Plaintiffs and members of the NCWHA Class and Subclass, including the type of work to be performed and the rate of pay. *See id.*

In order to work in the United States on an H-2B visa, Plaintiffs and each member of the NCWHA Class had to apply for and obtain a visa. The named Plaintiffs and members of the NCWHA Class then traveled from Mexico to North Carolina to begin work for Defendants. Plaintiffs and members of the NCWHA Class were required to bear the cost of the visa, border crossing, and transportation.

3

Taking the allegations of the Complaint as true for purposes of this motion, defendants did not reimburse the named Plaintiffs or members of the NCWHA Class for those costs. As a result, the named Plaintiffs and members of the NCWHA class were paid less then the promised wage during their first workweek.

A requirement for Defendants to employ people through the H-2B visa program is that they pay the H-2B visa employees at least the "prevailing wage." Taking the allegations of the Complaint as true for the purposes of this motion, during some workweeks in 2009, defendants paid the name d Plaintiffs and members of the NCWHA Subclass less than the prevailing wage.

### III. ANALYSIS – Propriety of NCWHA Class Claims Certification

When a settlement is reached prior to Rule 23 certification, the law permits a class to be certified solely for the purposes of settlement. *See Borcea v. Carnival Corp.*, 238 F.R.D. 664, 671 (S.D. Fla. 2006). "There is a strong judicial policy in favor of settlement, in order to conserve scarce resources that would otherwise be devoted to protracted litigation." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). The parties seeking class certification still must meet the four prerequisites of Federal Rule of Civil Procedure 23(a)(1) through (4), and then must establish that they constitute a proper class of at least one of the types delineated in Rules 23 (b)(1) through (3). However, in those cases, courts need not inquire whether the class will be manageable at trial because settlement renders trial unnecessary. *See Anchem Products v. Windsor*, 521 U.S. 591, 620 (1997). Subclasses must independently satisfy the requirements of Rule 23 as well. *See Farrar & Farrar Dairy, Inc. v. Miller-St. Nazianz, Inc.*, 254 F.R.D. 68, 76 (E.D.N.C. 2008).

A. <u>The Named Plaintiffs are Members of, and Precisely Have Defined, the Plaintiff Class and Subclass they Seek to Represent</u>

The court must make two initial determinations before certifying a class: first, it must ascertain that a precisely defined class exists, *see Roman v. ESB, Inc.*, 550 F.2d 1343, 1348 (4th

Cir. 1976); and, second, it must ensure that the proposed class representative is a member of the putative class, *see East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977). The class and subclass that the named Plaintiffs seek to represent under the NCWHA are specifically defined in paragraphs 47 and 49 of the Complaint, and described hereinabove at pages 2-3.

Both the NCWHA Class and Subclass are defined as all individuals who were employed by Defendants in a non-supervisory capacity "at a specific location, during a specific time frame, and who were injured in one of [several] delineated ways" and therefore is sufficiently precise. *See Haywood v. Barnes*, 109 F.R.D. 568, 576 (E.D.N.C. 1986) (hereinafter "*Haywood*"). The named Plaintiffs worked for Defendants as seafood processors pursuant to H-2B visas during the relevant time period. Because they incurred travel and visa costs for which they were not reimbursed, their average pay was less than the prevailing wage during the first work week. Therefore, they are members of the NCWHA Class they seek to represent. Additionally, the named Plaintiffs were regularly compensated at an hourly rate that was less than the prevailing wage, and therefore are members of the NCWHA Subclass which they seek to represent.

### B. The Numerosity, Commonality, Typicality and Adequacy Requirements of Rule 23(a) are Satisfied as to the Class and Subclass

A class action under Rule 23 "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 161 (1982) (hereinafter "*Falcon*"). Thus, "*Falcon* requires the trial court to engage in an extensive factual analysis at the certification stage in order to satisfy itself that the requirements of Rule 23 have been met." *Haywood*, 109 F.R.D. at 575. However, the trial court does not examine the merits of the underlying claims when it decides a motion for class certification. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974); *see also Rodger v. Electronic Data Systems Corp.*, 160 F.R.D. 532, 539 (E.D.N.C. 1995).

5

Furthermore, for purposes of a certification motion, the court assumes the truth of the complaint's allegations. *See, e.g., Peoples v. Wendover Funding, Inc.*, 179 F.R.D. 492, 497, n.2 (D. Md. 1998). It also is true that courts should "give Rule 23 a liberal rather than a restrictive construction, adopting a standard of flexibility in application which will in the particular case 'best serve the ends of justice for the affected parties and . . . promote judicial efficiency.'" *Gunnells v. Health Plan Services, Inc.*, 348 F.3d 417, 424 (4th Cir. 2003) (internal citation omitted); *see also Kidwell v. Transportation Communications Int'l Union*, 946 F.2d 283, 305 (4th Cir. 1992) (observing the "[t]rend is to give Rule 23 a liberal construction); *Rodger*, 160 F.R.D. at 535 (same).

1. *Numerosity*

The numerosity requirement of Rule 23(a)(1) mandates that the class be "so numerous that joinder of all members is impracticable." There is no set number of members necessary for class certification and the decision to certify or not certify a class must be based upon the particular facts of each case. *See Haywood*, 109 F.R.D. at 576 (courts have "certified classes composed of as few as eighteen . . . and twenty-five members") (citations omitted).

The proposed settlement class includes 123 people who worked for Defendants pursuant to H-2B visas between March 2008 and the present. The proposed settlement subclass includes 91 people who were paid less than prevailing wage between March 2008 and the present.

Additionally, the court finds that joinder of all putative class members is nearly impossible. Where, as here, class members are geographically dispersed, lack sophistication, and are non-English-speaking migrant workers, courts have found that these additional factors make joinder impracticable. *See Gaxiola*, 2011 WL 806792, slip op. at *10. Furthermore, the Plaintiffs contend that the named Plaintiffs and members of the NCWHA Class and Subclass are "economically disadvantaged, making individual suits difficult to pursue." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993).

6

The court FINDS in this case that the number of putative class and subclass members is sufficiently great, and that the particular circumstances render joinder a near impossibility. Accordingly, the court CONCLUDES that the class meets the Rule 23(a)(1) numerosity requirement.

2. *Commonality*

Under the "commonality" requirements of Rule 23(a)(2), at least one common question of law or fact must exist among class members. *See Haywood*, 109 F.R.D. at 577. In *Hernandez Garcia*, the court was satisfied that all of the putative class members were required to bear the costs of transportation, visa, border crossing and passport expenses associated with the H-2B program, even though there were some differences in how they were paid and their job requirements.

In the instant case, the named Plaintiffs and the NCWHA Class members share several common questions of law and fact, which are alleged in paragraph 51 of the Complaint. These are (a) whether the transportation, visa and border crossing expenses and fees were primarily for the benefit of the employer; and (b) whether the Defendants reduced the named Plaintiffs' and NCWHA Class members' pay below the promised wage by requiring them to bear the costs identified above, and failing to reimburse them for those coasts during the first workweek. Likewise, the common question of law and fact between the named Plaintiffs and the NCWHA Subclass, which is alleged in paragraph 52 of the Complaint, is whether the Defendants failed to pay the named Plaintiffs and the members of the NCWHA Subclass all the wages they had agreed to pay when those wages were due for each hour or part of an hour that each such worker was employed by the Defendants, in accordance with N.C. GEN. STAT. § 95-25.6, when Defendants did not pay the prevailing wage during each workweek.

While some underlying acts may differ, such as the sum each class member spent on transportation, those differences affect damages rather than liability and do not destroy

7

commonality. *See Haywood*, 109 F.R.D. at 577 (holding that class certification will not be defeated because there are some factual variations among the members' grievances). Here, as in *Hernandez Garcia*, the court FINDS that the named Plaintiffs and members of the class and subclass they seek to represent have the same interests and have suffered the same injuries. Therefore, the court CONCLUDES that the named Plaintiffs have satisfied the commonality requirement.

3. *Typicality*

Rule 23(a)(3) requires that "the claims of the representative parties must be typical of the claims of the class." *Haywood*, 109 F.R.D. at 578. "The claim of a party is typical if it arises from the same event or course of conduct which gives rise to the claims of other class members and is based on the same legal theory." *Id.* (citation omitted). "[T]he requirements of commonality and typicality tend to merge" in that "[b]oth serve as guideposts for determining whether under particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Falcon*, 457 U.S., at 157 n.13. The typicality requirement does not require that all of the putative class members share identical claims. *See Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3rd Cir. 1985) (" '[t]ypical' is not identical"); *see also Rodger*, 160 F.R.D. at 538 ("A court may determine that the typicality requirement is satisfied even when the plaintiffs' claims and the claims of the class members are not identical"). The prerequisites are that the plaintiffs "have suffered similar injuries," and "class representatives must not have an interest that is antagonistic to that of the class members." *Rodger*, 160 F.R.D. at 538.

The facts alleged in the Plaintiffs' Complaint herein and the named Plaintiffs' declarations meet the requirements of Rule 23(a)(3) with respect to the NCWHA Class and Subclass. The named Plaintiffs' claims and claims of the NCWHA Class members arise from the

same practices and course of conduct by the Defendants. The named Plaintiffs and members of the proposed NCWHA Class were all H-2B employees of Defendants and they all were required by Defendants to bear the cost of transportation, visa, and border crossing fees in order to work for the Defendants. While there may be some small differences, such as variance in the amount of money each class member paid for transportation from Mexico to North Carolina, the claims of the named Plaintiffs and the proposed NCWHA Class are based on the same practices by the Defendants and are not in conflict. Furthermore, the claims of the named Plaintiffs and the proposed NCWHA Class members are based on the same legal theory: that because the visa, transportation and border crossing expenses were incurred for the benefit of the employer, they operated as a *de facto* deduction bringing their wages below the promised wage during the first workweek.

Likewise, the named Plaintiffs' and the NCWHA Subclass members' claims are based on the same course of conduct by the Defendants. The named Plaintiffs and members of the proposed NCWHA Subclass all were entitled to a certain promised wage by virtue of the Defendants' participation in the H-2B program, but for some workweeks Defendants paid them less than the promised wage. Their claims are based on the legal theory that Defendants' failure to pay at least the H-2B prevailing wage violated the NCWHA. Although the number of workweeks that each class member experienced a promised wage violation may vary, the claims of the named Plaintiffs and the NCWHA Subclass members are based on exactly the same legal theory and are not in conflict.

This situation is very similar to that in *Gaxiola*, where the court found that both the commonality and typicality requirements were satisfied because the class representative's claim and putative class members' claims were based on the same legal theory, even if there were some underlying factual differences. *See Gaxiola*, 2011 WL 806792, slip op. at *11. Therefore, based upon the record now before the court, the court CONCLUDES that the Plaintiffs have

9

established that the claims under N.C. GEN. STAT. §§ 95-25.3 and 95-25.6 are "typical" of the claims of the NCWHA Class and Subclass they seek to represent.

   *4. Adequacy*

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." This two-part inquiry determines, first, that the class representatives' claims are sufficiently interrelated to, and not antagonistic with, the class members' claims; and second, that legal counsel is qualified, experienced, and "will vigorously prosecute the action." *Rodger*, 160 F.R.D. at 539 (citation omitted); *see also Haywood*, 109 F.R.D. at 578-79. The named Plaintiffs here have met these requirements with respect to the proposed NCWHA Class and Subclass.

The named Plaintiffs each have indicated their understanding of their obligation as class representatives in the event that the court certifies this as a class action with respect to the NCWHA claims. *See* Declaration of Clermont Fraser, Exhibit 2 to [DE-53], ¶ 8. The Plaintiffs have maintained regular contact with their counsel of record during the entire time period relevant to this motion. *Id.* at ¶ 7.

In addition, under the arrangement between the Plaintiffs and their counsel, all expenses incident to class certification can be advanced to the named Plaintiffs by counsel for the Plaintiffs, with the named Plaintiffs remaining ultimately liable for such costs in the event the court were to reject either the Settlement Agreement or the Plaintiffs' request and motion that the expenses involved in providing notice to the class be paid for by the Defendants. *See id.*, at ¶¶ 9-10; *see Haywood*, 109 F.R.D. at 580 (approving such cost advance arrangement).

Finally, Carol Brooke, Clermont Fraser, Ariela Migdal, and Lenora Lapidus, co-counsel for the named Plaintiffs, all are experienced counsel who previously have been counsel in class action litigation, including class litigation involving identical claims as asserted in the instant

case. *See id.*, at ¶ 5; Declaration of Carol Brooke, Exhibit 3 to [DE-53]; Declaration of Ariela Migdal, Exhibit 4 to [DE-53]; and Declaration of Lenora Lapidus, Exhibit 5 to [DE-53].

### C. The Class Satisfies the Requirements of Rule 23(b)(3)

Class certification under Rule 23(b)(3) requires that common issues of law or fact predominate over individual issues and that the class action be the superior method of dealing with the dispute. The factors used to make this determination are: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action." Rule 23(b)(3), Fed. R. Civ. P.; *see also Haywood*, 109 F.R.D. at 580-83, 592-93.

The Plaintiffs' first NCWHA cause of action turns on whether the transportation, visa and border crossing expenses incurred by the H-2B workers were an "incident of and necessary to the employment" of the Plaintiffs and each member of the NCWHA Class. *See Arriaga v. Florida Pacific Farms, LLC*, 305 F.3d 1228, 1234-48 (11th Cir. 2002) (quoting 29 C.F.R. § 531.32(a) & (c)); *Gaxiola*, 2011 WL 806792, at * 7. The Plaintiffs' second NCWHA cause of action turns on whether there were workweeks in which Plaintiffs and NCWHA Subclass members were paid less than the promised wage because of the Defendants' practice of paying the federal minimum wage as opposed to the prevailing wage for H-2B workers.

Class treatment of the legal issues identified in this case also would be superior to other procedures for the handling of the claims in question for a number of reasons. Plaintiffs' counsel represent that no member of the NCWHA Class has any necessary interest in individually controlling the prosecution of the claims at issue in this litigation. "Additionally, because of the relatively small amount of the wage claims in this case, no individual class member could have

11

any reasonable capability to pursue this litigation on an individual basis." *Gaxiola*, 2011 WL 806792, at * 12.

Additionally, the court is informed and finds that no other litigation concerning this matter has been filed by any of the parties involved in the present action. The court is informed that plaintiffs' counsel are not aware of any other litigation against Defendants besides this action. Furthermore, the court has a substantial interest in the resolution of the issues raised in this litigation occurring in one forum. Because the Plaintiffs and members of the NCWHA Class and Subclass all were employed by the same employers and pursuant to virtually identical H-2B clearance orders, the management of a class action under Rule 23(b)(3) in this matter is not expected to present any difficulties. *See Haywood*, 109 F.R.D. at 593.

The court FINDS that the proposed class satisfies the requirements of (b)(3) for the reasons already stated in section III. B. herein as to Rule 23(a). *See Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986) (holding that satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality"). The legal and factual issues described in paragraphs 27-43 of the Complaint predominate over any individual issues of law and fact for any Plaintiff class member. Accordingly, the court CONCLUDES, based on the allegations in the Complaint and declarations referenced herein, certification of the NCWHA Class and NCWHA Subclass is appropriate under Rule 23(b)(3).

## IV. ORDER

It is ORDERED, therefore, that the parties' Joint Motion for Certification of Settlement Classes [DE-52] is ALLOWED. This action hereby is CERTIFIED as a settlement class action under Rule 23(b)(3), FED. R. CIV. P., for back wages and liquidated damages under N.C. GEN. STAT. § 95-25.22 with respect to the **NCWHA Class** defined as:

> all non-supervisory workers who were, are and/or shall be jointly or severally employed by Defendants at any time from March 17, 2008, and continuing thereafter through the date on which final judgment is entered in this action, who

performed and/or shall perform any work for Defendants pursuant to a labor certification and visa issued to the Defendants and those workers under 8 U.S.C. § 1101(a)(15)(H)(ii)(b), and who did not receive all of their wages when they were due because of Defendants' failure to reimburse class members for expenses they incurred obtaining their H-2B visas and traveling from their homes in Mexico to North Carolina to work for Defendants;

and with respect to the **NCWHA Subclass**, defined as:

all non-supervisory employees of defendants who were employees by Defendants for any period beginning on March 17, 2008, and continuing thereafter through the date on which final judgment is entered in this action, who did not receive all of their wages when those wages were due under an express, constructive, or implied agreement to pay those wages at those rates for all work performed for the Defendants when Defendants paid members of the NCWHA Subclass less than the prevailing wage required by the H-2B visa program during some workweeks.

*See* Complaint [DE-58] at ¶¶ 47 & 49.

SO ORDERED.

This, the 5th day of July, 2011.

*James C. Fox*
JAMES C. FOX
Senior United States District Judge